IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VANDELLA M., § § Plaintiff, § § v. § § KILOLO KIJAKAZI, ACTING § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | Case No. 3:22-cv-01585-K-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Vandella M.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security (ECF No. 1). The District Court referred the case to the United States Magistrate Judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. For the reasons explained below, the Magistrate Judge recommends that the District Court AFFIRM the Commissioner's decision.

## Background

Plaintiff alleges that she is disabled due to a traumatic brain injury, post-concussion syndrome, migraines, memory loss, post-traumatic stress disorder (PTSD), back and neck pain, sleeping disorder, depression, anxiety, hypertension,

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

and rotator cuff injury. Admin. R. 29, 121-22, 131 (ECF No. 10-1).[2] Plaintiff was born in 1964, and she alleges that she has been disabled since February 7, 2017, the date she was injured in a motor vehicle accident. Admin. R. 121. Plaintiff has at least a high school education and has past relevant work experience as a regional re-entry administrator/correctional program specialist. Admin. R. 39.

Plaintiff applied for disability insurance benefits on April 24, 2020. Admin. R. 26, 121. Her claim was denied initially and on reconsideration. Admin. R. 130, 145. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on June 10, 2021.[3] Admin. R. 84-120.

The ALJ found Plaintiff was not disabled from February 7, 2017, her alleged disability onset date, through December 31, 2018, her date last insured, and thus not entitled to disability benefits. Admin. R. 27. Utilizing the five-step sequential evaluation,[4] the ALJ first found that Plaintiff had not engaged in substantial

---

[2] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

[3] Because of the extraordinary circumstances presented by the COVID-19 pandemic, the ALJ was unable to conduct the hearing by video.

[4] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue,* 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.*

gainful activity since her alleged onset date. Admin. R. 28. At the second step, the ALJ found that Plaintiff suffered from the severe physical impairment of "degenerative disc disease of the cervical spine," and the non-severe mental impairments of PTSD, depression, and anxiety, which caused mild limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage herself. Admin. R. 28-30. The ALJ specifically noted that "the impairment of headaches has been fully evaluated and considered in the context of Social Security Ruling 19-4p . . . but is not found to be severe prior to the date last insured." Admin. R. 29. At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in appendix 1 of the social security regulations. Admin. R. 30-31.

Before proceeding to the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 404.1567(b) except she was able to lift and/or carry, push and/or pull up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 6 hours total in an 8-hour workday, and sit for 6 hours total in an 8-hour workday. The claimant was frequently able to climb ramps and stairs, balance, stoop, kneel, and crouch, occasionally crawl; was never able to climb ladders, ropes, or scaffolds; and should avoid hazards such as unprotected heights and fast[-]moving mechanical parts.

---

at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

3

Admin. R. 31.

Relying on the testimony of a vocational expert (VE), at step four, the ALJ found that Plaintiff was capable of resuming her past relevant work as a regional re-entry administrator/correctional program specialist. Therefore, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, and was not entitled to benefits. Admin. R. 27, 39.

Plaintiff appealed the ALJ's decision to the Appeals Council. Admin. R. 16-22. The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. Admin. R. 6-9. Plaintiff then filed this action in federal district court, challenging the decision on the grounds that the ALJ erred in (i) finding at step 2 that Plaintiff's migraine headaches were non-severe; and (ii) failing to include limitations in the RFC finding to accommodate her mental impairments. *See* Pl.'s Br. 6 (ECF No. 14).

## Legal Standard

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

4

(1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

**Analysis**

**1. Severe Impairment**

Plaintiff contends that "the ALJ erred in finding Plaintiff's well-documented migraine headaches were non-severe, causing no more than minimal work-related limitations, and resulting in an RFC finding that does not accurately reflect all her impairments and limitations." Pl.'s Br. 6. In response, the Commissioner argues that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff's migraine headaches were not a severe impairment before December 31, 2018, Plaintiff's date last insured for [disability insurance benefits]." Def.'s Br. 4. The Court agrees.

The definition of medically severe impairment at step two "has a specific—if somewhat surprising—meaning." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Phrased in the negative, an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (alteration in original) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "This second step requires the claimant to make a de minimis showing." *Salmond*, 892 F.3d at 817.

As previously explained, at step two of the five-step sequential evaluation, while the ALJ found that Plaintiff had the severe impairment of "degenerative disc disease of the cervical spine," she stated that "the impairment of headaches has been fully evaluated and considered in the context of Social Security Ruling 19-4p

6

. . . but is not found to be severe prior to the date last insured." Admin. R. 28-29. The ALJ further stated that she "considered all of the [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [her] residual functional capacity." Admin. R. 30.

Plaintiff contends that the ALJ incorrectly found her headaches were non-severe—citing multiple instances in the record in which providers note her migraines as well as her own subjective complaints—and argues that a finding of severe impairment is warranted. Pl.'s Br. 8-16. According to Plaintiff, "the record contains a raft of evidence documenting [her] migraine headaches along with the functional limitations resulting from them." Pl.'s Br. 16. But this Court may not reweigh the evidence. *Martinez*, 64 F.3d at 174. If substantial evidence supports the ALJ's findings that Plaintiff's headaches were "non-severe," the Court must affirm. *See id.* at 173.

Here, the administrative decision reflects that the ALJ considered Plaintiff's testimony and her treatment records, which include her self-reports, diagnoses, treatment recommendations, and examination results. Admin. R. 31-39. For example, the ALJ considered notes from Plaintiff's emergency room visit on February 7, 2017, noting that Plaintiff did not report "dizziness or headaches." Admin. R. 32-33. The ALJ also considered an orthopedist's note dated August 9, 2017, that Plaintiff "reported experiencing headaches, intermittently." Admin. R. 33. In addition, the ALJ referred to the treatment notes of Ganana Tesfa, a neurologist with Methodist Health, who treated Plaintiff for migraines: "The

7

claimant reported having ocular migraines occurring almost daily but lasting two to three minutes and reported some relief with medication. As of March 13, 2019, the claimant reported tolerating Ajovy well and reported doing well." Admin. R. 35.

In addition, the ALJ made a credibility determination concerning Plaintiff's subjective complaints, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record* for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are *inconsistent with the evidence of record, specifically prior to the date last insured*. As noted above, the claimant did not stop working as a result of her impairments; rather, she retired and became a stay-at-home mother. She suffered a motor vehicle accident that did result in severe impairments; however, treatment notes regularly noted improvement in her condition up through her date last insured. The claimant did not file for disability until much later, in April 2020, indicating a lesser degree of impairment than that alleged. Further, the record documents extensive volunteer work during the relevant time frame.

Admin. R. 36 (emphasis added).

Having considered the ALJ's written decision and the administrative record, the Court concludes that substantial medical evidence supports the ALJ's findings that Plaintiff's headaches were not severe.[5] And, the fact that other evidence in the

---

[5] Although Plaintiff does not raise a separate point of error with respect to the ALJ's credibility determination or challenge whether she complied with applicable

8

administrative record could support a different conclusion is not sufficient to warrant remand. *See Hammond v. Barnhart*, 124 F. App'x 847, 853 (5th Cir. 2005) (holding that, even though there was "some evidence that point[ed] to a conclusion that differ[ed] from that adopted by the ALJ," there was no error because there was "far more than a scintilla of evidence in the record that could justify [the] finding that [the plaintiff's] impairments were not severe disabilities"). Accordingly, the ALJ did not err by finding Plaintiff's headaches to be a non-severe impairment, and remand is not required on this issue.

Moreover, even if the ALJ's findings were not supported by substantial evidence, the error was harmless because Plaintiff has not shown that the limitations acknowledged by the ALJ due to her other impairments failed to accommodate the limitations, if any, caused by her headaches. In other words, the ALJ found Plaintiff had a severe impairment and other non-severe impairments and, in determining her limitations, "consider[ed] the limiting effects of all

---

regulations concerning credibility findings, she does take issue with the ALJ's references to her ability to engage in extensive volunteer work and her decision to wait three years after her motor vehicle accident to apply for benefits. Pl.'s Br. 21-22. However, an ALJ's determination "of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citations omitted); *see also Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994) (explaining that the ALJ is in the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing"). Thus, even assuming, *arguendo*, that the ALJ's discussion of Plaintiff's credibility was flawed, it was harmless error. As stated above, substantial evidence exists to support the ALJ's conclusion that Plaintiff's headaches were not severe under the applicable regulations.

impairments, even those that are not severe." Admin. R. 30; *see also* 20 C.F.R. § 404.1545(e). Because the ALJ continued beyond step two and considered all impairments in determining the RFC, any error made at step two did not prejudice Plaintiff. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.").

### 2. RFC Finding

As her second point of error, Plaintiff contends that the "ALJ's step 4 finding is contrary to law because she omitted mental limitations from the RFC finding, contrary to her own findings that identify at least mild mental limitations." Pl.'s Br. 22. Plaintiff further argues that the ALJ's error is especially prejudicial given that the "effect of even minimal mental limitations on a claimant's ability to perform highly skilled jobs is magnified because of the high mental functioning required to perform such jobs." Pl.'s Br. 25. The Commissioner responds that substantial evidence supports the ALJ's decision to exclude mental limitations in the RFC. Def.'s Br. 5-6.

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir.

1988) (per curiam). An individual's RFC should be based on all the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

For the reasons that follow, the Court holds that the ALJ did not err and substantial evidence supports her determination not to include any mental limitations in the RFC.

"The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments." *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (citation and quotation marks omitted). Thus, "[e]ven where an ALJ finds that a claimant's mental impairments are non-severe, 'the ALJ must still consider the impact of [any] non-severe mental impairments—either singly or in combination with other conditions—when he determines [the

11

claimant's] RFC.'" *Danny R. C. v. Berryhill,* 2018 WL 4409795, at *15 (N.D. Tex. Sept. 17, 2018) (Ramirez, J.) (quoting *Gonzales v. Colvin,* 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.)); *see* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). "This is because even non-severe limitations may combine with other severe impairments to . . . narrow the range of work that the individual can perform." *Danny R. C.,* 2018 WL 4409795, at *15 (citation omitted).

"Courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Audrey M. D. v. Comm'r of Soc. Sec.,* 2022 WL 18356464, at *2 (N.D. Tex. Dec. 28, 2022) (Rutherford, J.) (citation omitted), *adopted by* 2023 WL 223178 (N.D. Tex. Jan. 17, 2023) (Boyle, J.). *See, e.g., Mindy C. v. Kijakazi,* 2022 WL 3210357, at *5 (N.D. Tex. Aug. 9, 2022) (Hendrix, J.) (finding no legal error where the ALJ properly considered plaintiff's mental impairments in calculating the RFC and did not include them in the RFC); *Gonzales,* 2016 WL 107843, at *6, *8 (finding no legal error where the ALJ considered mental health records, reports, and plaintiff's testimony regarding his mental impairments in his RFC analysis—but did not include any mental limitations in his RFC—because "the ALJ adequately discussed and considered the

12

limiting effects of [Plaintiff's] mental impairments in formulating his RFC"); *Danny R. C.*, 2018 WL 4409795, at *15-16 (finding no legal error where the ALJ declined to include mental limitations in plaintiff's RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis.").

In this case, although the ALJ found that Plaintiff's PTSD, depression, and anxiety were not severe impairments, her decision reflects that she considered Plaintiff's mental functioning when performing her RFC analysis. As previously noted, prior to formulating the RFC, the ALJ concluded at step two that Plaintiff, in addition to her severe physical impairment of "degenerative disc disease of the cervical spine," suffered from the non-severe mental impairments of "post-traumatic stress disorder, depression, and anxiety." Admin. R. 28-29. Then, the ALJ analyzed Plaintiff's mental functional limitations using the "paragraph B" criteria. Admin. R. 29-30.[6] The ALJ found that Plaintiff was mildly limited in her abilities to: understand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage herself. Admin. R. 29-30.

---

[6] "Paragraph B contains four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation," which the ALJ utilizes to rate the degree of functional limitation resulting from a mental impairment. *Gonzales v. Colvin*, 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.) (citing 20 C.F.R. § 404.1520a(b)(2), (c)(4); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00C).

In concluding that Plaintiff's mental limitations were not severe and only caused mild limitations, the ALJ considered the opinions of the state agency psychological consultants who both concluded there was insufficient evidence "to determine the severity of the claimant's alleged mental impairments prior to the date last insured." Admin. R. 30. The ALJ found these assessments "not persuasive," because the evidence showed "Plaintiff began counseling in March 2017 and was noted to make significant progress, though still having some stress and anxiety related to her physical injuries." Admin. R. 30. The ALJ stated that evidence showed Plaintiff's "[d]epression was noted to be in remission," and the "record reflects significant volunteer work, including fundraising and event coordination." Admin R. 30.

The ALJ also explained:

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis.

Admin. R. 30. The ALJ further stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing [her] residual functional capacity. Admin. R. 30.

Additionally, when the ALJ analyzed Plaintiff's RFC, she discussed Plaintiff's testimony and reports concerning her mental impairments, as well as her health records and treatment notes from her psychological examinations with

14

Lisa Hensley, Ph.D., and Mavis Bradsher, LCSW and psychotherapist. Admin. R. 32-39.

The ALJ noted Plaintiff was seen for a psychological consult by Dr. Hensley on March 27, 2017, and she "was noted to appear to be suffering from anxiety and depressed mood, and reported being frustrated because she is not able to do the things she normally does, such as extensive volunteer work. She declined referral for prescription of an anti-depressant." Admin. R. 33. By July 27, 2017, Plaintiff "reported feeling better, and [the] assessment noted depression symptoms were reduced. Records document continued participation in events and functions, despite complaints of frustration and ongoing pain." Admin. R. 33. Dr. Hensley's treatment notes of October 22, 2018, noted "significant progress through psychotherapy paralleling her physical recovery and ability to re-engage in various areas of her life." Admin. R. 33 (citing Exhibit 10F/2-4, 5, 12, 15, 19, 20, 36, 45, 46, 50).

The ALJ also considered the treatment notes from Plaintiff's visits with Dr. Bradsher, who initially saw Plaintiff on November 18, 2018:

> Diagnosis was post-traumatic stress disorder. On December 3, 2018, the claimant reported making changes in her home that allowed her to be less stressed and more engaged in daily living. By December 10, 2018, the claimant was noted to present more calm and relaxed than before, and reported feeling better. Mood was calm.

Admin. R. 34 (citing Ex. 12F and 14F).

The ALJ also considered letters and medical source statements following the date last insured, including a medical source statement dated August 23, 2020,

15

from Dr. Brandy Robinson, Plaintiff's treating primary care provider, who noted "moderate to extreme limitations in the claimant's ability to understand, remember, and carry out instructions, marked to extreme limitation in the claimant's ability to interact with others, and noted additional limitations, with limitations present since June 26, 2017." Admin. R. 38. The ALJ found Dr. Robinson's assessment "unpersuasive," because it was "not well supported or consistent with treatment received prior to the date last insured and [Plaintiff's] activities of daily living." Admin. R. 38.

In addition, the ALJ considered and found unpersuasive medical source statements dated August 13, 2020, and October 2, 2020, from Richard Schmitt, Ph.D., Plaintiff's treating psychologist. Admin R. 398-39. She also considered a September 22, 2020 letter written by Dr. Hensley, in which Dr. Hensley noted that she supported a finding of disability. After pointing out that disability "is an issue reserved to the Commissioner[,]" the ALJ stated she "does not find Dr. Hensley's letter persuasive on this issue as it does not contain any objective findings or reference exams to support a finding of disability." Admin. R. 38.

Based on a review of the ALJ's written decision and the medical records to which she refers, the Court concludes that the ALJ sufficiently considered Plaintiff's mental impairments in calculating the RFC, and did not err in her decision not to include any mental limitations in the RFC. *See Gonzalez,* 2016 WL 107843, at *6 (When an ALJ properly considers a plaintiff's "mental impairments

16

in calculating the RFC," the ALJ does "not err by not including any mental limitations in the RFC.").

## Recommendation

For these reasons, the Magistrate Judge recommends that the District Court AFFIRM the Commissioner's decision.

**SO RECOMMENDED.**

July 26, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).